The opinion of the Court was delivered by
MuNRO, J.
The only-question to be considered is, whether the case made against the defendants comes within the pur *25 view of tbe Statute of 22 and 23 Car. 2, cbap. 7, upon, which, the indictment is founded.
Notwithstanding a period of nearly two centuries has elapsed since the enactment of this statute, and almost a century and a half since its adoption into the criminal code of this State, with the exception of the case of the State vs. Kirkpatrick (2 Brev. 440), and the recent case of the State vs. Bosse (8 Rich. 276), I have been unable to find, after the most diligent search, a single case, English or American, in which its provisions have been adjudicated.
It appears from the circuit report, that the buildings consisted of a smoke house and crib, neither of which was finished, and the injuries done to them consisted in the defendants having prized up the former, and removing three logs, and pushing back the roof so that it nearly fell, and letting down the end of the crib.
If the words “ or destroyed,” be stricken out of the statute entirely, it is clear, that by no rule of construction, can its. remaining language be made to embrace any injury to a building, other than to those, in which fire is the element' used in the work of destruction — and this by the way is the construction that has been placed upon the statute as it now stands, by some of the members of the Court.
But, conceding the construction which was contended for in behalf of the State to be correct, namely, that by the insertion of those words.into the statute, it was meant to include every kind of injury that might be done to a building whether by fire or otherwise, — it would, however, be a strained construe-1 tion of the words “ or destroyed,” standing alone .as they do, and unsustained by any thing in the context — to say nothing-of the rule which enjoins a strict construction of penal enactments — to hold, that these words were intended to embrace, within the provisions of this highly penal statute, every possible injury, however slight or trivial, that might be done to a building, merely because done in the night time; such for ex *26 ample as the breaking of a door or a window, or even to such injuries as those that were done to the buildings in question, by the defendants. When it is manifest, whether we resort to the context as furnishing an index to the scope and design of the authors of the statute — or to the ordinary meaning of the word “ destroyed” — that its sole purpose was to include within its provisions, such injuries only, whether by fire, or otherwise, as would amount, either to a total demolition of a building, or such as would unfit it for the purpose for which it had been erected.
This view is we think 'fully sustained by the construction which has been given by the English Courts to a comparatively recent Act of their parliament, containing similar provisions to those contained in the one under consideration. The Act to which I refer is the 7th & 8th Geo. 4th, chap. 30, sec. 8th, which enacts “That if any persons riotously and tumultuously assembled together, to the disturbance of the public peace, shall unlawfully demolish, pull down and destroy, or begin to demolish, pull down and destroy any church or chapel, &c., or any house, stable, &c., shall be guilty of felony, &c.”
In Ashton's case, which will be found in Eoscoe’s Crim.Ev. 886; “ The beginning to pull down, said Park, J., in a case where the prisoners were so charged — means not simply a demolition of a part, but of a part with intent to demolish the whole. If the prisoners meant to stop where they did (i. e. breaking windows and doors) and to do no more, they are not guilty, but if they intended when they broke the windows to go further, and destroy the house, they are guilty of the offence.” And in R. vs. Adams, 51 Eng. Com. Law, 168, Coleridge, J., said to the jury, “Before you can find the prisoners guilty, you must be of opinion, that they meant to leave the house no house at all in fact. If they intended to leave it still a house, though in a state however dilapidated, they are not guilty under this highly penal statute.”
*27 It is clear however that tbe defendants’ motion in arrest of judgment cannot prevail, and for tbe reason, that tbe indictment sets out an offence that is clearly within the statute,- and is therefore upon its face free from exception; and if it had been sustained by the proof, judgment must have been awarded upon it.
But the motion for a new trial must be granted; and it is .acccordingly ordered.
It is further ordered, that the prisoners be remanded to the jail of Kershaw District, and be let to bail, themselves in the sum of five hundred dollars, and two or more good sureties in the same sum among themselves.
O’Neall, . Wardlaw, Withers, and Whitner, JJ., concurred.

Motion granted.